## IN THE DISTRICT COURT OF WAGONER COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| BROOKE BUTLER, Personal Representative of the Estate of Baylor Kole Allen Butler, deceased; JEFF CARTER, Personal Representative of the Estate of Stevie Ray Vaughan Carter, deceased; and JOHNNIE DUROSSETTE, an individual; | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| AFI & LOGISTICS, LLC d/b/a Northshore Moving Company, a foreign company; and PURPLE WAVE, INC., d/b/a Purple Wave Auction, a foreign corporation, | ) ) ) ) ) |
| Defendants. | ) ) |

Case No. CJ-25-196

Wagoner County, Oklahoma
Filed
In District Court

MAY 0 7 2025

James E. Hight
Court Clerk
At_____o'clock_____M

## PETITION

**COME NOW** the Plaintiffs, BROOKE BUTLER, as the Personal Representative of the Estate of Baylor Kole Allen Butler, deceased; JEFF CARTER, as the Personal Representative of the Estate of Stevie Ray Vaughan Carter, deceased; and JOHNNIE DUROSETTE, individually, and for their causes of action against the Defendants, AFI & LOGISTICS, LLC d/b/a Northshore Moving Company and PURPLE WAVE, INC. d/b/a Purple Wave Auction, allege and state as follows:

### The Parties

1.    At all times material hereto, Baylor Kole Allen Butler (hereinafter, "Mr. Butler") was an Oklahoma citizen and resident.

2.    On March 24, 2025, Mr. Butler died as a result of the causes stated in this Petition.

3.    Plaintiff BROOKE BUTLER is Mr. Butler's surviving spouse and has been appointed Personal Representative for Mr. Butler's Estate.

EXHIBIT
1

4.      All potential beneficiaries of a recovery for wrongful death and their relationship to Mr. Butler are identified as follows:

   a.  The Estate of Baylor Kole Allen Butler, deceased, by and through Brooke Butler as the Personal Representative;

   b.  Brooke Butler, surviving spouse of Mr. Butler;

   c.  C.A.B., surviving minor child of Mr. Butler;

   d.  P.K.B., surviving minor child of Mr. Butler;

   e.  Kurt Butler, surviving father of Mr. Butler; and

   f.  Deion Davisson, surviving mother of Mr. Butler.

5.      At all times material hereto, Stevie Ray Vaughan Carter (hereinafter, "Mr. Carter") was an Oklahoma citizen and resident.

6.      On March 24, 2025, Mr. Carter also died as a result of the causes stated in this Petition.

7.      Plaintiff JEFF CARTER is Mr. Carter's father and has been appointed Personal Representative for Mr. Butler's Estate.

8.      All potential beneficiaries of a recovery for wrongful death and their relationship to Mr. Carter are identified as follows:

   a.  The Estate of Stevie Ray Vaughan Carter, deceased, by and through Jeff Carter as the Personal Representative;

   b.  Jeff Carter, surviving father of Mr. Carter; and

   c.  Angela Gates, surviving mother of Mr. Carter.

9.      At all times material hereto, Plaintiff JOHNNIE DUROSSETTE (hereinafter, "Mr. Durossette") was an Oklahoma citizen and resident.

10.     Defendant AFI & LOGISTICS, LLC d/b/a Northshore Moving Company (hereinafter "Northshore Moving Company" or "Northshore") is a Louisiana company. Northshore may be served with process on its registered agent: Adam R. Fos, 44212 Stein Road, Hammond, LA 70403.

11.     Defendant PURPLE WAVE, INC. d/b/a Purple Wave Auction (hereinafter "Purple Wave") is a Delaware corporation.  Purple Wave may be served with process on its registered agent:  Corporation Service Company, 1100 SW Wannamaker Road, Suite 103, Topeka, KS 66604.

## Jurisdiction and Venue

12.     On or about March 24, 2025, Mr. Butler and Mr. Carter were killed and Mr. Durossette was seriously injured in a motor vehicle collision that occurred on the Muskogee Turnpike in Wagoner County, Oklahoma near mile marker 18.

13.     Therefore, pursuant to 12 O.S. § 141, jurisdiction and venue are proper in this Court.

## Factual Allegations

14.     At all times material hereto, Northshore Moving Company was and is in the business of and derives substantial revenue from residential and commercial moving services.  It is an active commercial carrier registered with the United States Department of Transportation. Northshore's USDOT Number is 2034397.

15.     On its website, Northshore Moving Company provides the public a link to the Federal Motor Carrier Safety Regulations and specifically states as follows on the FAQ page:

3

"When selecting a moving company, it is your responsibility to evaluate a carrier's reputation and compliance with federal regulations."

16.    At all times material hereto, Purple Wave was and is in the business of and derives substantial revenue from owning and operating one of the nation's largest wholesale heavy equipment auction companies. It specializes in equipment liquidation through no-reserve internet auctions and, according to Purple Wave's website, provides "the easiest and most straightforward way to buy and sell used equipment and vehicles."

17.    As further stated on Purple Wave's website, Purple Wave offers "a full-service experience that reduces the headache of selling." Purple Wave handles "all the marketing – leveraging [its] vast network of buyers – sending targeted emails, postcards, and doing personal outreach to buyers and bidders who were previously interested in similar equipment."

18.    The Purple Wave website also specifically states that, before a seller's item sells, a Purple Wave "auction specialist will come to your location to thoroughly catalog and list your machine – taking quality, in-depth images and video to showcase your item to our large buying community."

19.    Purple Wave also offers shipping services to "safely move your newly purchased item from its current location to yours."

20.    Purple Wave, Inc. is also a registered commercial carrier with the United States Department of Transportation, USDOT Number 1730223. Its shipping service is a separate company called Purple Wave Shipping, LLC, USDOT Number 3838703.

21.    At some point prior to February 12, 2025, Northshore contracted with Purple Wave to auction and sell a 2013 International Truck, VIN No. 3HAJTSKM0DL169866, with a gross weight of 25,999 pounds (hereinafter, "the moving truck):



22.    As shown in the image above and as depicted on Purple Wave's auction sale listing, the moving truck was equipped with a separate, rectangular, enclosed cargo area distinct from the cab, commonly known as a "cargo box" or "box."

23.    As shown above and by the image below, and as further depicted on Purple Wave's sale listing, the moving truck was also equipped with a "flat bed," rear and side lamps, retroreflective sheeting, reflex reflectors, and a rear underride safety guard:




24.     The rear underride safety guard, also known as a rear impact guard, is a device mounted on the rear of a truck or trailer that is intended to prevent smaller vehicles from sliding under during a collision. Its purpose is to protect occupants of passenger vehicles from injury or death in underride crashes.

25.     The online Purple Wave listing for the moving truck stated as follows with respect to the cargo box:

**Notes**
- **Box will be removed prior to action**
- **Possible engine issues**
- Dash warning indicator: ABS
- Dead battery

26.     Northshore usually removes only the cargo box itself from its moving trucks and not the beds, lamps, reflectors, or underride safety guards.  The following image was obtained from Google Maps Street View and depicts an example of a cargo box removed from a different truck:



27.     The moving truck was sold to a private bidder for $1,870.00 during Purple Wave's February 12, 2025 nationwide online vehicle and equipment auction.  Upon information and belief,

the private bidder was an individual named Pedro Aquino (hereinafter, "Mr. Aquino"). Mr. Aquino lives near Wichita, KS, and made his own arrangements to take possession of the moving truck from Northshore and transport it back to Kansas.

28.     On or about March 22, 2025, Mr. Aquino arrived at Northshore Moving Company's main location in Hammond, LA. He arrived in a 1999 Ford F450 "box truck." Mr. Aquino's box truck weighed approximately 5,000 pounds and is depicted below:



29.     Upon arrival, Mr. Aquino advised Northshore that he was there to retrieve and transport the moving truck he purchased in the Purple Wave auction the month before. After showing his paperwork to Northshore, Mr. Aquino then proceeded to couple his box truck with the moving truck in order to tow it away, as the moving truck was not operational or otherwise in a drivable condition.

30.     According to Adam Fos (hereinafter, "Mr. Fos"), principal and owner of Northshore Moving Company, Mr. Aquino spent "about an hour" on site "fabricating" a towbar coupling for his 5,000-pound box truck to tow the 25,999-pound moving truck. At one point, Mr. Aquino asked to borrow some of Northshore's tools. Northshore obliged by allowing Mr. Aquino

7

to use some of its own tools for the coupling "fabrication." Mr. Aquino retrieved the actual towbar from the local wrecker facility the day after the collision, but the following image depicts the rear of Mr. Aquino's box truck, with the towbar receptacle depicted on the step-bumper:



31.    While at Northshore Moving Company on March 22, 2025, Mr. Aquino also mounted temporary lighting on the moving truck. He used a large amount of duct tape and multiple extension cords that extended from somewhere on or near his box truck and onto portions of the moving truck behind the box truck. The actual temporary lamps are currently possessed by the Oklahoma Highway Patrol, but the following image depicts the wiring and duct tape:



32.     After coupling the trucks and mounting the temporary lamps, Mr. Aquino then physically returned Northshore's tools, told the staff he was leaving, and announced he was tired and needed a nap. He then slowly drove the coupled trucks away and, upon information and belief, began his journey back to Kansas. Mr. Fos then commented to his co-workers that Mr. Aquino's coupled vehicles did not appear to be safe.

33.     Upon information and belief, while on his way back to Kansas Mr. Aquino was stopped by a highway patrol officer in Arkansas on Sunday, March 23, 2025. He was given a warning for traveling below the minimum speed and allowed to continue his journey back to Kansas.

34.     At approximately 4:00 AM on Monday, March 24, 2025, Mr. Butler, Mr. Carter, and Mr. Durossette met each other at a Love's Travel Stop near mile marker 26 on the Muskogee Turnpike in order to carpool to their job in Tulsa. After arriving, Mr. Carter and Mr. Butler joined Mr. Durossette in his private vehicle, a 2013 Ford Fusion. Mr. Durossette then drove his vehicle and entered the westbound lanes of the Muskogee turnpike, with Mr. Butler in the front passenger seat and Mr. Carter in the rear passenger seat.

35.     At or near mile marker 18, well before sunrise and in the dark, Mr. Durossette's vehicle was traveling at highway speed westbound on the Muskogee Turnpike. At the same time, and a short distance ahead, Mr. Aquino was towing the moving truck at a very low rate of speed and without visible lamps.

36.     Suddenly and without warning the Fusion violently crashed into the rear of the towed moving truck. Mr. Durossette was seriously injured, and both Mr. Carter and Mr. Butler were killed after being impaled by the moving truck's exposed chassis beams.

9

37.    As stated on Purple Wave's auction listing, the cargo box had been removed from the moving truck. However, the truck's bed, exterior lighting, retroreflective sheeting, reflex reflectors, and rear underride safety guard had also been removed, exposing bare chassis beams extending approximately twelve (12) feet from the rear dual wheels:



38.    The chassis beams were exposed because, at some point prior to March 22, 2025, Northshore modified and/or altered the moving truck by removing the box, truck bed, retroreflective sheeting, reflex reflectors, and rear underride safety guard. These dangerous and unsafe modifications and alterations actually and proximately caused – and also increased – the harm for which recovery of damages is sought herein. Further, when Northshore allowed Mr. Aquino to take possession of the moving truck it knew or should have known the temporary lighting was unsafe and dangerous, it knew or should have known the towbar used to tow the

moving truck was not only inadequate but also violated federal law, and it knew Aquino was fatigued after having driven from Kansas.

## COUNT 1
## STRICT PRODUCTS LIABILITY
### (Against Northshore Moving Company)

39.     Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

40.     The moving truck was the cause of Plaintiffs' deaths and injuries.

41.     The moving truck was defective and unreasonably dangerous when it left Northshore's possession because Northshore modified and altered the moving truck by removing its bed, rear and side lamps, retroreflective sheeting, reflex reflectors, and rear underride safety guard

42.     These deliberate, reckless, grossly negligent, unsafe, and dangerous modifications and alterations made the moving truck unreasonably dangerous to Plaintiffs and the motoring public beyond which would ever be contemplated by an ordinary consumer.

43.     Northshore is a product seller that altered and modified the product (the moving truck), and these alterations and modifications were a substantial factor in causing the harm for which recovery of damages is sought herein.

44.     Therefore, Northshore Moving Company is strictly for Plaintiffs' injuries and damages.

11

## COUNT 2
## <u>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u>
### (Against Northshore Moving Company)

45.    Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

46.    Northshore is a merchant who sold a good, the moving truck.

47.    The moving truck was not merchantable at the time of Plaintiffs' injuries and deaths because it was defective and unreasonably dangerous, and Northshore, the seller, had adequate notice of the dangerous and defective condition of the moving truck.

48.    The defective nature of the moving truck proximately caused Plaintiffs' injuries and deaths.

49.    Therefore, Northshore Moving Company is liable for breach of the implied warranty of merchantability.

## COUNT 3
## <u>NEGLIGENCE</u>
### (Against Northshore Moving Company)

50.    Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

51.    Northshore Moving Company negligently altered, modified, and sold the moving truck and is otherwise responsible for safely placing the moving truck into the stream of interstate commerce.

52.    Northshore's combined negligent acts and omissions rendered the moving truck unreasonably dangerous for its designed, intended, and foreseeable uses.

12

53.     Further, Northshore had a duty to sell and deliver the moving truck in a condition that was not defective and that was not unreasonably dangerous to foreseeable drivers and vehicle occupants.

54.     Northshore, particularly given its commercial carrier status and innate familiarity with the Federal Motor Carrier Safety Regulations, had a duty to adequately warn Mr. Aquino and the motoring public of the moving truck's defective and unreasonably dangerous condition. This is especially true given Aquino's affirmative statements to Northshore that he was tired and needed a nap.

55.     Northshore Moving Company breached the above duties, and these breaches actually and proximately caused all of the Plaintiffs' damages.

56.     Northshore Moving Company is, therefore, liable for negligence.

## COUNT 4
## NEGLIGENCE *PER SE*
### (Against Northshore Moving Company)

57.     Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

58.     When Northshore altered, modified, sold, distributed, and conveyed possession of the moving truck in an unreasonably dangerous and unsafe condition and manner it violated multiple federal statutes, all of which individually and together make Northshore negligent *per se*.

59.     Title 49 C.F.R. § 393.86 (a) requires any trailer or semitrailer weighing over 10,000 pounds and manufactured after 1998 to be equipped with a rear impact guard that meets the requirements of Federal Motor Vehicle Safety Standard No. 223. The moving truck was a 2013 International already equipped with a legally compliant rear impact guard. Yet, Northshore

13

deliberately chose to remove the rear impact guard, which rendered it unsafe, defective, and unreasonably dangerous. It then allowed Mr. Aquino to leave the property without the rear impact guard, a piece of equipment specifically designed to prevent injuries and deaths such as the ones that occurred here, which makes Northshore liable for negligence *per se*.

60.    In addition, Title 49 C.F.R. § 393.71 (d) states that "[t]ow-bars of the type which depend upon the bumpers as a means of transmitting forces between the vehicles shall not be used to tow a motor vehicle weighing more than 5,000 pounds." The moving truck weighed 25,999 pounds, and Northshore assisted Mr. Aquino in coupling the trucks with a bumper-dependent towbar. It then allowed Mr. Aquino to leave the property in a 5,000-pound box truck while using the illegal towbar to pull the defective and unreasonably dangerous moving truck, which also caused and/or contributed to Plaintiffs' deaths and injuries. Therefore, Northshore is liable for negligence *per se*.

61.    Title 49 C.F. R. § 393.13 requires all trailers and semi-trailers manufactured after 1993, weighing over 10,001 pounds, and with a width of over 80 inches wide to be equipped with retroreflective sheeting and reflex reflectors. Federal law requires the retroreflective sheeting and reflex reflectors to be applied to each side of the trailer and to end as close to the rear of the trailer as practicable in both the upper and lower rear areas. Northshore deliberately chose to remove the moving truck's retroreflective sheeting and reflex reflectors prior to delivering it to Mr. Aquino, and it knew the moving truck was inoperable and would need to be towed and/or hauled. This further rendered the moving truck unsafe, defective, and unreasonably dangerous. Further, Northshore then allowed Mr. Aquino to leave the property without retroreflective sheeting or

reflex reflectors, all of which was specifically designed to prevent injuries and deaths such as those suffered by the Plaintiffs. Therefore, Northshore is liable for negligence *per se.*

62.     In addition, Title 49. C.F.R. § 393.25 sets forth the requirements for lamps other than head lamps. All lamps shall be securely mounted on a rigid part of the vehicle. Temporary lamps must be securely mounted to the load. Each lamp should meet the visibility requirements specified by FMVSS No. 108. All exterior lamps (both required lamps and any additional lamps) shall be steady-burning with the exception of turn signal lamps and hazard warning signal lamps. Additionally, the stop lamps on each vehicle shall be activated upon application of the service brakes. Northshore assisted Mr. Aquino in mounting temporary lamps on the moving truck and then allowed him to leave the property with the unreasonably dangerous and unsafe moving truck. The lamps were not securely mounted on a rigid part of the moving truck and did not meet the visibility or conspicuity requirements under federal law. The moving truck was dark and incapable of being seen at the time of the collision because its temporary lamps were not illuminated and/or were not steady-burning, all of which further caused and/or contributed to Plaintiffs' injuries and deaths. Therefore, Northshore is liable for negligence *per se.*

63.     Title 49 C.F.R. § 392.3 states that no driver shall operate a commercial motor vehicle, and a motor carrier shall not permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. Before departing Northshore's premises on March 22, 2025, Mr. Aquino informed Northshore that he was tired and needed nap. Despite this, Northshore – a commercial motor carrier – permitted Mr. Aquino to leave the premises in violation of Section

15

392.3.   This further caused and/or contributed to Plaintiffs' injuries and deaths.   Therefore, Northshore is liable for negligence *per se.*

**COUNT 5**
**NEGLIGENT UNDERTAKING**
**(Against Northshore Moving Company)**

64.   Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

65.   Separate from its general negligence, Northshore Moving Company is also liable for the tort of negligent underaking, particularly for assisting Mr. Aquino in coupling the towed vehicles and for then allowing Mr. Aquino to leave the premises with the dangerous and defective moving truck.

66.   Northshore assumed a duty by undertaking the rendition of services to another, Mr. Aquino, which it should have recognized as necessary for the protection of third persons and the motoring public, which included Plaintiffs.

67.   Specifically, Northshore sold the moving truck to Mr. Aquino for consideration and then rendered further services to Mr. Aquino by providing him assistance in coupling the trucks for towing.   From there, Northshore – which claims full knowledge of and compliance with the Federal Motor Carrier Safety Regulations – allowed a fatigued Mr. Aquino to leave the premises with the defective and unreasonably dangerous moving truck.

68.   Northshore's failure to exercise reasonable care in these respects, particularly considering its prior dangerous and usnafe modfications and alterations of the moving truck, further increased the risk of injury and death, and – given Northshore's status as a commercial carrier – supplants all duties that may have been owed by Mr. Aquino or anyone else.

16

69.    Northshore Moving Company is liable for the separate tort of negligent undertaking.

## COUNT 6
## PUNITIVE/EXEMPLARY DAMAGES
### (Against Northshore Moving Company)

70.    Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

71.    Northshore Moving Company's acts and omissions described herein demonstrated a reckless disregard for others and were grossly negligent and/or deliberate and/or intentional and/or reckless.  Therefore, Plaintiffs are entitled to recover punitive/exemplary damages against Northshore Moving Company in an amount consistent with Oklahoma law, as set forth under 23 O.S. § 9.1.

WHEREFORE, Plaintiffs, BROOKE BUTLER, as the Personal Representative of the Estate of Baylor Kole Allen Butler, deceased; JEFF CARTER, as the Personal Representative of the Estate of Stevie Ray Vaughan Carter, deceased; and Johnnie Durossette, individually, regardless of whether Louisiana, Kansas, or Oklahoma substantive law applies, demand judgment against Defendant AFI & LOGISTICS, LLC d/b/a Northshore Moving Company for all damages and injuries allowed by Okla. Stat. tit. 12, § 1053, including but not limited to all economic damages, non-economic damages, lost wages, lost earning capacity, pain and suffering, mental anguish, grief, loss of companionship, loss of consortium, loss of enjoyment of life, medical, funeral, and burial expenses, and punitive/exemplary damages, all in an amount in excess of $75,000.00, plus pre-judgment interest, post-judgment interest, costs, attorney fees as allowed by law, and any other further relief that is just and equitable.

## COUNT 7
## STRICT PRODUCTS LIABILITY
### (Against Purple Wave)

72.    Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

73.    The moving truck was the cause of Plaintiffs' deaths and injuries.

74.    The moving truck was defective and unreasonably dangerous Purple Wave auctioned and sold it because its bed, rear and side lamps, retroreflective sheeting, reflex reflectors, and rear underride safety guard had been removed.

75.    These unsafe, and dangerous modifications and alterations made the moving truck unreasonably dangerous to Plaintiffs and the motoring public beyond which would ever be contemplated by an ordinary consumer.

76.    Purple Wave is a product seller of a defectively and dangerously altered and modified product and knew or should have known the truck was sold and delivered in a dangerous and unsafe condition.

77.    These dangerous and unsafe alterations and modifications were a substantial factor in causing the harm for which recovery of damages is sought herein.

78.    Therefore, Purple Wave is strictly for Plaintiffs' injuries and damages as a seller of a defective and unreasonably dangerous product.

## COUNT 8
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Purple Wave)

79.    Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

18

80.     Purple Wave is a merchant who sold a good, the moving truck.

81.     The moving truck was not merchantable at the time of Plaintiffs' injuries and deaths because it was defective and unreasonably dangerous and Purple Wave, the seller, had adequate notice of the dangerous and defective condition of the moving truck..

82.     The defective nature of the moving truck proximately caused Plaintiffs' injuries and deaths.

83.     Therefore, Purple Wave is liable for breach of the implied warranty of merchantability.

**COUNT 9**
**NEGLIGENCE**
**(Against Purple Wave)**

84.     Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

85.     Purple Wave is one of the nation's largest online heavy equipment liquidation auctions. Purple Wave handles all marketing while also leveraging its "vast network of buyers" by actively targeting them for profit.

86.     Purple Wave's own website confirms that it will personally send an auction specialist to thoroughly catalog, photograph, and list any machine a seller wishes to sell at auction. For an additional fee, a seller may choose to use Purple Wave's shipping services to "safely move your newly purchased item from its current location to yours."

87.     Purple Wave is intimately familiar with the Federal Motor Carrier Safety Regulations and is an active carrier registered with the USDOT. It had a duty to auction the

moving truck in a condition that was not defective and that was not unreasonably dangerous to the motoring public and vehicle occupants.

88.    In addition, Purple Wave had a duty to adequately warn all bidders, purchasers, and the motoring public of the moving truck's defective and unreasonably dangerous condition.

89.    Purple Wave knew or should have known that Northshore had altered and modified the moving truck by removing its cargo box, rear safety underride guard, operational rear and side lighting, retroreflective sheeting, and reflex reflectors.

90.    These dangerous, unsafe, reckless alterations and modifications were the substantial factor in causing the harm for which recovery is sought herein, and Purple Wave's actual or constructive knowledge of these dangerous an unsafe modifications and alterations is demonstrated by Purple Wave's auction listing stating the "box" would be removed prior to the auction.

91.    Purple Wave failed to properly catalog, index, or otherwise account for these dangerous and unsafe modifications in any way.

92.    Purple Wave also failed to provide a safe means for transporting the dangerous and unsafe moving truck, such as a flat-bed wrecker or tow truck.

93.    Purple Wave's negligent acts and omissions further rendered the moving truck unreasonably dangerous for its designed, intended, and foreseeable uses.

94.    Purple Wave breached its duties under the law, and these breaches caused and/or contributed to all of the Plaintiffs' damages.

95.    Therefore, Purple Wave is liable for negligence.

## COUNT 10
## NEGLIGENCE *PER SE*
### (Against Purple Wave)

96.     Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

97.     Purple Wave's online auction of the defective, unsafe, and unreasonably dangerous moving truck violated multiple federal regulations, which makes Purple Wave negligent *per se*.

98.     Purple Wave also had actual and constructive knowledge of the Code of Federal Regulations and was federally mandated to comply with them.

99.     Specifically, Purple Wave's auction and sale violated Title 49 C.F.R. § 393.86 (rear impact guard), 49 C.F. R. § 393.13 (retroreflective sheeting and reflex reflectors); 49. C.F.R. § 393.25 (lamps and temporary lamps); 49 C.F.R. § 393.71 (towbars); and 49 C.F.R. § 392.3 (driver fatigue).

100.    Therefore, Purple Wave is liable for negligence *per se*.

## COUNT 11
## NEGLIGENT UNDERTAKING
### (Against Purple Wave)

101.    Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

102.    Separate from its general negligence, Purple Wave is also liable for the tort of negligent underaking in auctioning and selling the dangerous and unsafe moving truck.

103.    Purple Wave assumed a duty by undertaking the rendition of services to another, Mr. Aquino, which it should have recognized as necessary for the protection of third persons and the motoring public, which included Plaintiffs.

21

104.   Purple Wave's failure to exercise reasonable care, particularly considering its prior dangerous and usnafe modfications and alterations of the moving truck, further increased the risk of injury and death, and – given Purple Wave's status as a commercial carrier – supplants all duties that may have been owed by Mr. Aquino or anyone else.

105.   Purple Wave is liable for the separate tort of negligent undertaking.

## COUNT 12
## PUNITIVE/EXEMPLARY DAMAGES
### (Against Purple Wave)

106.   Plaintiffs reallege and incorporate all preceding Paragraphs of this Petition as if fully stated herein.

107.   Purple Wave's acts and omissions described herein demonstrated a reckless disregard for others and were grossly negligent and/or deliberate and/or intentional and/or reckless. Therefore, Plaintiffs are entitled to recover punitive/exemplary damages against Purple Wave in an amount consistent with Oklahoma law, as set forth under 23 O.S. § 9.1.

WHEREFORE, Plaintiffs, BROOKE BUTLER, as the Personal Representative of the Estate of Baylor Kole Allen Butler, deceased; JEFF CARTER, as the Personal Representative of the Estate of Stevie Ray Vaughan Carter, deceased; and Johnnie Durossette, individually, regardless of whether Louisiana, Kansas, or Oklahoma substantive law applies, demand judgment against Defendant PURPLE WAVE, INC. d/b/a Purple Wave Auction for all damages and injuries allowed by Okla. Stat. tit. 12, § 1053, including but not limited to all economic damages, non-economic damages, lost wages, lost earning capacity, pain and suffering, mental anguish, grief, loss of companionship, loss of consortium, loss of enjoyment of life, medical, funeral, and burial expenses, and punitive/exemplary damages, all in an amount in excess of $75,000.00, plus pre-

judgment interest, post-judgment interest, costs, attorney fees as allowed by law, and any other further relief that is just and equitable.

**Dated: May 6, 2025.**

Respectfully submitted,

**SMITH BARKETT LAW GROUP, PLLC**
Rusty Smith, OBA #19575
Michael L. Barkett, OBA #16171
P.O. Box 767/555 W. Okmulgee
Muskogee, OK 74402-0767
Telephone: (918) 912-2000
Facsimile: (918) 912-2122
Email: rsmith@smithbarkett.com
      mbarkett@smithbarkett.com
Attorneys for Plaintiffs

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**