70.01487

# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BROOKE BUTLER, Personal Representative Of the Estate of Baylor Kole Allen Butler, Deceased; JEFF CARTER, Personal Representative of the Estate of Stevie Ray Vaughan Carter, deceased; and JOHNNIE DUROSSETTE, an individual; | |
| Plaintiffs, | |
| v. | Case No. 25-cv-00199-RAW-GLJ |
| AFI & LOGISTICS, LLC d/b/a Northshore Moving Company, a foreign company; and PURPLE WAVE, INC., d/b/a Purple Wave Auction, a foreign corporation. | |
| Defendants. | |
| AFI & LOGISTICS, LLC d/b/a Northshore Moving Company, a foreign company; | |
| Third-Party Plaintiff, | |
| v. | |
| JOHNNIE DUROSSETTE, an individual, and PEDRO AQUINO, an individual. | |
| Third-Party Defendants, | |
| PURPLE WAVE, INC., d/b/a Purple Wave Auction, a foreign corporation. | |
| Third-Party Plaintiff, | |
| v. | |
| AFI & LOGISTICS, LLC d/b/a Northshore Moving Company, a foreign company and PEDRO AQUINO, an individual. | |
| Third-Party Defendants, | |

**THIRD-PARTY DEFENDANT PEDRO AQUINO'S MOTION TO DISMISS**
**THIRD-PARTY PETITION AND BRIEF IN SUPPORT**

Third-Party Defendant, Pedro Aquino ("Aquino"), moves the Court to dismiss the Third-Party Petition filed by Defendant, Purple Wave, Inc., d/b/a Purple Wave Auction ("Purple Wave") because it fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Purple Wave does not have the right to indemnity from Aquino because the contract it relies upon does not contain express contractual indemnity language, and there is no common law relationship between Purple Wave and Aquino. Further, dismissal of Purple Wave's claims is appropriate since amendment would be futile. Purple Wave cannot create a legal relationship as required for indemnification by amending its pleadings, nor can it alternatively assert a claim for contribution against Aquino.

**INTRODUCTION**

Plaintiffs assert claims against Purple Wave and AFI & Logistics, LLC, d/b/a Northshore Moving Company ("Northshore") arising out of an auto accident involving a truck driven by Aquino which occurred on March 24, 2025, on the Muskogee Turnpike in Wagoner County, Oklahoma. (Petition, Ex. 1 to Doc. 2, ¶ 12). In their Petition, Plaintiffs assert claims against Purple Wave and Northshore for products liability, breach of implied warranty of merchantability, negligence, negligence per se, negligent undertaking, and punitive damages. (*Id.* ¶¶ 39-107). Plaintiffs allege that Northshore made alterations to the truck purchased and towed by Aquino, removed critical safety features thereby making the truck unreasonably dangerous, failed to warn Aquino of the danger of the truck, and violated federal trucking safety regulations with its modifications of the truck. (*Id.* ¶¶ 41, 47, 54-55, 58-59). Similarly, Plaintiffs allege that Purple Wave, as the auctioneer of the truck, sold an unreasonably dangerous and defective truck to Aquino, failed to warn Aquino of the danger of the truck, and violated federal trucking safety

2

regulations. (*Id.* ¶¶ 74, 81, 88, 94, 97). In response, Purple Wave asserted third-party indemnity claim against Aquino. (*See* Def. Purple Wave, Inc.'s, Answer, Ex. 2, Third-Party Petition, ¶¶ 1-12).

As discussed below, Purple Wave's claim against Aquino should be dismissed for two reasons. First, there is no express contractual language sufficient to create an indemnity relationship between Purple Wave and Aquino. Second, any amendment to the Third-Party Petition would be futile because Purple Wave cannot through amendment create contractual indemnity language that does not exist or create the type of legal relationship that would support an indemnity claim. Additionally, any amendment to add a contribution claim would not save Purple Wave's claims. Contribution claims are no longer valid following Oklahoma's adoption of several liability.

## **ARGUMENTS AND AUTHORITIES**

**I.     The Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is not to test the underlying facts of the case, but to test the law that governs the plaintiff's claims. *Weise v. Casper*, 507 F.3d 1260, 1270 (10th Cir. 2007) ("a motion to dismiss raises only a question of law: whether, taking the facts in the complaint as true, the Plaintiff has a legal claim"). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the Plaintiff." *In re Ferro Corp. Derivative Litigation*, 511 F.3d 611, 617 (6th Cir. 2008) (citation omitted). However, a complaint still must meet certain requirements in order to survive a motion to dismiss. To avoid dismissal under Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *VanZandt v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished opinion); *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). The district court should sustain a motion to dismiss where the complaint fails to do so. *Id.*

## II. Purple Wave Does not Have a Contractual Right to Indemnity.

A party may obtain a right to indemnity based on an express contractual provision. OKLA. STAT. tit. 15, § 421. However, Oklahoma courts strictly construe contractual indemnity agreements. *Transpower Constructors, a Div. of Harrison Int'l Corp. v. Grand River Dam Auth.*, 905 F.2d 1413, 1420 (10th Cir. 1990) (applying Oklahoma law). To obtain contractual indemnity, "a right of indemnity [must] be indicated expressly in a contract between [the] parties." *Wind River Constr., L.L.C. v. Harper Constr. Co., Inc.*, CIV-17-599-SLP, 2018 WL 9837964, at *2 (W.D. Okla. Apr. 5, 2018). In addition, if a party seeks indemnification under an express contractual provision, the contract must be supported by consideration. OKLA. STAT. tit. 15, § 421; *Gunn v. Fryberger*, 1918 OK 642, ¶ 2, 176 P. 248, 249 ("It is fundamental there must be [] consideration for every contract").

A contract provision stating that one party intends to hold the other party harmless for any and all liability for damages does not create a right to indemnity. In *Sinclair Oil & Gas Co. v. Brown*, Sinclair hired a contractor to drill an oil well on an oil and gas lease. *Sinclair Oil & Gas Co. v. Brown*, 333 F.2d 967, 968 (10th Cir. 1964), *aff'g Sinclair Oil & Gas Co. v. Brown*, 220 F. Supp. 106 (E.D. Okla. 1963). A year later, the contractor's employee sued Sinclair asserting tort claims for injuries sustained while working on the gas well arguing that Sinclair was vicariously liable for the contractor's negligence. *Id*. Sinclair filed a third-party complaint against the contractor, alleging that the parties had an express indemnification agreement. *Id*. Specifically, Sinclair relied upon a provision in the contract stating the contractor agrees "to hold Company (Sinclair) harmless from any and all liability for damages to the person * * * of any and all persons resulting from the operations of Contractor hereunder, * * * ,". *Id*.

The court acknowledged that "it must clearly appear that the parties to an indemnity agreement intended that the indemnitor would be liable for damages resulting from the negligence

4

of the indemnitee, before such effect will be given to their contract, and that intention must be found in the language of their contract."[1] *Id*. at 968–969. Applying this standard, the Tenth Circuit affirmed the trial court's decision, holding that Sinclair did not have a right to indemnity from the contractor because this language did not unambiguously indicate the parties' intent to create an indemnification relationship. *Id.* at 969.

Here, there is no express contractual language sufficient to create an indemnity relationship between Purple Wave and Aquino. Purple Wave argues that they are entitled to indemnity based on an indemnity agreement, specifically pointing to language in the Internet Auction Agreement and applicable service terms and conditions which provide:

> LIMITATION OF LIABILITY:
> THE BUYER AGREES IN NO EVENT SHALL SELLER OR AUCTIONEER BE LIABLE TO BUYER OR ANY THIRD PARTY FOR ANY LOSS OF USE, REVENUE OR PROFIT OR LOSS OF DATA OR DIMINUTION IN VALUE OR FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, OR PUNITIVE DAMAGES WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT, (INCLUDING NEGLIGENCE), OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGES WERE FORESEEABLE AND WHETHER OR NOT SELLER OR AUCTIONEE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.
>
> MAXIMUM LIABILITY
> IN NO EVENT SHALL AUCTIONEER'S AND SELLER'S AGGREGATE LIABILITY FOR ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, EXCEED THE TOTAL OF THE AMOUNTS PAID BY BUYER TO AUCTIONEER AND SELLER FOR THE ITEMS AND SERVICES SOLD HEREUNDER.

---

[1] In *Sinclair Oil & Gas Co. v. Brown*, the court applied Texas law. However, Texas and Oklahoma law are in accord on the standard to establish contractual indemnity. *See Fretwell v. Prot. Alarm Co.*, 1988 OK 84, ¶ 12, 764 P.2d 149, 152–53 ("This Court will strictly construe an agreement which would have the result of indemnifying one against his own negligence, but where the intention to do so is unequivocally clear from an examination of the contract, such an agreement is enforceable.") (citing *Sinclair Oil and Gas v. Brown,* 333 F.2d 967 (10th Cir.1964)).

(Def. Purple Wave, Inc.'s, Answer, Ex. 2, Third-Party Petition, ¶¶ 3-4). This language is similar to the alleged indemnity agreement in *Sinclair*. As in *Sinclair*, the language in Purple Wave's contract with Mr. Aquino fails to clearly manifest the parties' intent to create express indemnity. Instead, both provisions focus on the limitations of the parties' liabilities, distinct from the language required to create an indemnification relationship. Accordingly, Purple Wave has no right of indemnity from Aquino based on the Internet Auction Agreement.

### A. Purple Wave Cannot Establish a Common law Right to Indemnity.

For implied indemnity, "[t]he general rule of indemnity is that one without fault, who is forced to pay on behalf of another, is entitled to indemnification." *See Nat'l Union Fire Ins. Co.*, 1989 OK 157, ¶ 7. This right to indemnity must be premised "on the understanding that a legal relationship exists between the parties." *Id.* ¶ 8. Thus, where there are alleged concurrent or joint tortfeasors, "having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other . . . ." *Id.* ¶ 11. (internal quotation omitted).

A common law right to indemnity may exist based on a legally imported relationship, arising when the indemnitor is vicariously liable to the plaintiff through the independent acts of the indemnitee. *See id.*, ¶ 8; *Porter v. Norton-Stuart Pontiac-Cadillac of Enid*, 1965 OK 18, ¶ 14, 405 P.2d 109, 113. For a party to be entitled to indemnification absent an express indemnity agreement, "[t]he legal relationship must have existed before the potential indemnification claim arose," and the "claim for indemnification cannot form the legal relationship upon which a claim for indemnification must be based." *White Elec. Servs., Inc. v. Franke Food Serv. Sys., Inc.*, 09-CV-0504-CVE-PJC, 2010 WL 1542575, at *2 n.3 (N.D. Okla. Apr. 15, 2010).

A party has a common law right to indemnity when its liability to the plaintiff is based on the doctrine of respondeat superior. In *Porter v. Norton-Stuart Pontiac-Cadillac of Enid*, a garage owner brought an indemnity action against an equipment manufacturer and its agent after settling a customer's injury claim. *Porter,* 1965 OK 18, ¶¶ 1-2. The injury happened when the manufacturer's agent (the "tortfeasor") accidentally put a customer's car in drive while demonstrating an oscilloscope, causing the car to move forward and strike its owner. *Id*. ¶¶ 2-6. Although no mechanics employed by the garage were involved in the accident, the owner still sued the garage and the oscilloscope manufacturer under the doctrine of respondeat superior, alleging the tortfeasor was an agent of both the manufacturer and the garage. *Id*. ¶¶ 2, 13.

The court explained that, as to the plaintiff, the tortfeasor had an agency relationship with the garage since the garage had the right of control over the tortfeasor, therefore making the garage liable to the plaintiff under the doctrine of respondeat superior. *Id.* ¶ 22. However, the court clarified that, as between the garage and the oscilloscope manufacturer, the manufacturer's agent was "clearly the agent, servant or employee of [the oscilloscope manufacturer]." *Id.* ¶ 23. Accordingly, the court held that the garage was entitled to indemnity from the manufacturer and the tortfeasor since the garage was liable to the plaintiff constructively, based on its agency relationship with the tortfeasor. *Id.* ¶ 0, syl.

The present case is distinguishable from *Porter*. Here, there is not an agency relationship between Purple Wave and Aquino. In fact, Purple Wave *expressly denies the existence of an agency relationship* with Aquino at the time of the accident. (*See* Def. Purple Wave, Inc.'s, Answer, Ex. 2, Affirmative Defenses ¶ 3). Accordingly, the implied right of indemnity established in *Porter* does not create a right of indemnity by Purple Wave against Aquino.

Further, the court in *Sinclair Oil Corp. v. Texaco, Inc*. expressly held that a buyer and seller relationship does not create the required relationship to establish common law indemnity. 94 Fed. Appx. 760, 762 (10th Cir. 2004). In *Sinclair,* Sinclair purchased an oil refinery from Texaco. After Sinclair purchased the refinery, a worker on the property was exposed to hazardous materials, causing the employee to suffer respiratory injuries. *Id*. The employee sued Texaco and Sinclair, asserting tort claims. *Id*. The trial court rejected Sinclair's attempt to obtain indemnity from Texaco, finding there was no contractual indemnification agreement or common law relationship that could support an indemnity claim. *Id.* Sinclair appealed to the Tenth Circuit Court of Appeals. *Id*.

On appeal, the Court rejected Sinclair's contractual indemnity claim and then analyzed whether Sinclair had a common law right of indemnity from Texaco. *Id*. at 768. The Court swiftly rejected Sinclair's assertion that *Porter* found an implied obligation to indemnify in the absence of a special or legal relationship between the parties, explaining that *Porter* "involved a respondeat superior relationship[.]" *Id*. at 769. The Court also rejected Sinclair's contention that it had a right to indemnity from Texaco based on a legal relationship created through their purchase agreement, stating "[t]he seller and buyer . . . do not, by virtue of that status alone, have the kind of legal or special relationship Oklahoma courts have required for implied indemnity to exist." *Id*. Accordingly, the Court affirmed the trial court's decision holding Sinclair did not have the right to indemnity from Texaco. *Id*.

Purple Wave and Aquino do not have any special relationship that would support a common law indemnity claim. Accordingly, Purple Wave's indemnity claim fails on its face and should be dismissed.

**III.     Amendment to Purple Wave's Third-Party Petition Would Be Futile.**

Courts should deny leave to amend where the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). If the complaint, as amended, would be subject to dismissal, then the amendment is considered futile. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). If a party fails to state a claim in their complaint, and amendment to the complaint would be futile, courts should grant the moving party's motion to dismiss with prejudice. *Chase v. Divine*, 543 Fed. Appx. 767, 769 (10th Cir. 2013).

Any amendments to Purple Wave's Third-Party Petition would be futile. No amendment can create a contractual or common law right to indemnity where none exists. Additionally, Purple Wave cannot alternatively assert contribution claims against Aquino since contribution claims are no longer valid under Oklahoma's several liability law.

### A. Purple Wave Cannot Create a Right to Indemnity from Aquino by Amending its Pleadings.

As explained above, Oklahoma law requires either an express indemnity agreement or a legal relationship, such as an agency relationship, for a party to have a right to indemnity. *See Nat'l Union Fire Ins. Co.*, 1989 OK 157, ¶ 8. However, no such express indemnity provision or legal relationship exists between Purple Wave and Aquino. Accordingly, Purple Wave cannot cure the defects in its Third-Party Petition by amendment.

### B. Contribution is No Longer a Valid Theory of Recovery.

While indemnity "shifts the entire loss to another party, contribution distributes the loss 'among the joint tortfeasors in proportion to their respective negligence . . . .'" *AMC West Housing LP v. NIBCO, Inc.*, CIV-18-959-D, 2021 WL 4302246, at *3 (W.D. Okla. Sept. 21, 2021) (quoting *Barringer v. Baptist Healthcare of Oklahoma*, 22 P.3d 695, 698 (Okla. 2001)). A party has a right to contribution from another party only when the tortfeasor seeking contribution "has paid more than their pro rata share of the common liability, and the total recovery is limited to the amount

9

paid by the tort-feasor in excess of their pro-rata share." OKLA. STAT. tit. 12, § 832. A tortfeasor's pro rata share is their expected contribution apportioned according to their degree of fault. *Nat'l Union Fire Ins. Co.,* 1989 OK 157, ¶ 22.

In 2011, Oklahoma abolished joint and several liability by amending OKLA. STAT. tit. 23, § 15, and adopting the current several liability rule. Under § 15, "the liability for damages caused by two or more persons shall be several only and a joint tortfeasor shall be liable only for the number of damages allocated to that tortfeasor." OKLA. STAT. tit. 23, § 15. Since Oklahoma's adoption of several liability precludes a party from ever paying in excess of their pro rata share of the plaintiff's damages based on their percentage of fault, contribution claims are no longer a valid theory of recovery.

Federal courts applying Oklahoma law have consistently held that contribution no longer exists in Oklahoma. In *O'Dell v. Baker*, the third-party plaintiffs asserted contribution claims against the third-party defendants arising out of a motor vehicle accident. *O'Dell v. Baker*, 22-CIV-147-RAW-GLJ, 2023 WL 2597888, at *1 (E.D. Okla. Mar. 22, 2023). The court granted the third-party defendants' motion to dismiss the contribution claims because joint liability is no longer permitted under OKLA. STAT. tit. 23, § 15, stating:

> The court agrees with the analysis of the magistrate judge that in the Amended Third-Party complaint, Baker/LIINK d/b/a Fast Lane Express rest their contribution claim on the alleged negligence of Johnson/Safety Plus in the operation of a tractor-trailer. As such, there is no plausible set of facts alleged or that could be alleged under which Baker/LIINK d/b/a Fast Lane Express can assert a contribution claim because they cannot pay more than their pro rata share of the common liability to Plaintiffs.

*Id*. at *2. Similarly, in *AMC West Housing LP v. NIBCO, Inc.*, the court granted the third-party defendant's motion to dismiss the third-party plaintiff's contribution claims, stating:

> Nevertheless, NIBCO's allegations here fail to state a plausible contribution claim. Contribution is only available "in favor of a tort-feasor who has paid more than

10

their pro rata share of the common liability." Okla. Stat. tit. 12 § 832(B). To the extent NIBCO is held liable on a negligence theory, it will never pay more than its pro rata share because, pursuant to § 15, its liability will be several only. Accordingly, any claim for contribution derived from NIBCO's alleged negligence is not viable.

*AMC W. Hous. LP v. NIBCO, Inc.*, CIV-18-959-D, 2021 WL 4302246, at *3 (W.D. Okla. Sept. 21, 2021).

Accordingly, any attempt by Purple Wave to assert a contribution claim would fail and is futile.

## CONCLUSION

WHEREFORE, premises considered, Third-Party Defendant, Pedro Aquino, respectfully requests the Court dismiss Purple Wave's Third-Party Petition with prejudice and grant him such further relief as the Court deems just and equitable.

Respectfully submitted,

**LATHAM, KEELE, LEHMAN, RATCLIFF, CARTER, & CLARKE P.C.**


s/Steven O. Kuperman
Brian L. Carter, OBA #20647
Steven O. Kuperman, OBA #22450
1515 E. 71st St., Ste. 200
Tulsa, OK 74136
(918) 970-2000 Telephone
(918) 970-2002 Facsimile
bcarter@law-lkl.com
skuperman@law-lkl.com

*Attorneys for Third-Party Defendant, Pedro Aquino*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

David R. Smith
Michael L. Barkett
mbarkett@smithbarkett.com
rsmith@smithbarkett.com
*Attorneys for Plaintiffs*


Brently C. Olsson
bolsson@cheeklaw.com
*Attorney for Defendant/Third-Party Plaintiff AFI & Logistics, LLC*


Jake Pipinich
jpipinich@piercecouch.com

and

Daniel J. Hoehner,
Benjamin Honeycutt
dhoehner@piercecouch.com
bhoneycutt@piercecouch.com
*Attorneys for Defendants/Third Party Plaintiff, Purple Wave, Inc.*


                s/Steven O. Kuperman_____