**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BROOKE BUTLER, Personal Representative of the Estate of Baylor Kole Allen Butler, deceased; JEFF CARTER, Personal Representative of the Estate of Stevie Ray Vaughan Carter, deceased; and JOHNNIE DUROSSETTE, Plaintiffs, | ) | |
| v. | ) | Case No. 25-CV-199-FAB-GLJ |
| AFI & LOGISTICS, LLC, and PURPLE WAVE, INC., Defendants. | ) | |
| AFI & LOGISTICS, LLC, Third-Party Plaintiff/Counterclaimant, | ) | |
| v. | ) | |
| JOHNNIE DUROSSETTE, Counterclaim Defendant, & PEDRO AQUINO, Third-Party Defendant. | ) | |
| PURPLE WAVE, INC., Cross-Claim Plaintiff, | ) | |
| v. | ) | |
| AFI & LOGISTICS, LLC, Cross-Claim Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case arises out of a fatal motor vehicle collision that occurred on the Muskogee Turnpike in Wagoner County in the Eastern District of Oklahoma. In March 2025, Pedro

Aquino purchased a 2013 International Truck ("International") from Defendant AFI & Logistics, LLC, doing business as Northshore Moving Company ("AFI"). He made this purchase at an auction run by Purple Wave, Inc., doing business as Purple Wave Auction ("Purple Wave"). Aquino towed the International behind a 1999 Ford F-450 box truck ("Box Truck") from the purchase point in Louisiana and was traveling westbound on the Muskogee Turnpike in the early morning hours of March 24, 2025. That morning, Johnnie Durossette was driving a vehicle along with passengers Baylor Kole Allen Butler and Stevie Ray Vaughan Carter. Durossette's vehicle collided with the International driven by Aquino. Butler and Carter died as a result of the collision, and Durossette was injured.

Durossette and representatives from Butler's and Carter's estates (collectively, "Plaintiffs") sued AFI and Purple Wave in state court in Wagoner County, Oklahoma, in Case No. CJ-25-196, on May 7, 2025. Purple Wave removed the case to this Court on June 10, 2025. *See* Docket Nos. 1-2. Plaintiffs' state court petition alleges twelve claims against these two Defendants, including claims against each for products liability, breach of the implied warranty of merchantability, negligence per se, and negligent undertaking, as well as claims for punitive damages. *See* Docket No. 2, Ex. 1, pp. 11-23.

Plaintiffs now seek leave to amend their complaint. On June 26, 2025, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Docket No. 18]. Plaintiffs proposed amended complaint seeks to add, *inter alia*, allegations that (i) AFI and Purple Wave acted as a joint venture to sell the International, (ii) at the time of sale the product was inoperable and sold as a non-functioning salvage good, (iii) Purple Wave's auction

listing provided three videos of the International's engine running and/or operating on public roadways, (iv) prior to Aquino taking possession of the International, AFI severed the cargo box from the international, removing the taillights, reflective tape, and DOT-mandated underride bumper, (v) the auction listing depicted the International with the cargo box, and (vi) it was omitted from the auction listing that the cargo box would be removed. Docket No. 84-1. Based on these allegations Plaintiffs seek to add seven new claims: joint venture liability, constructive fraud, negligent misrepresentation, intentional misrepresentation/actual fraud, violations of the Oklahoma Consumer Protection Act (OCPA), and violations of the Oklahoma Deceptive Trade Practices Act ("ODTPA"). AFI and Purple Wave oppose Plaintiffs' proposed amendment on the basis that amendment is futile. For the reasons stated below, the undersigned Magistrate Judge recommends Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 84] be DENIED.

**ANALYSIS**

"Rule 15(a) [of the Federal Rules of Civil Procedure] provides that leave to amend 'shall be freely given when justice so requires.' Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment." *Frank v. U.S. West Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (quoting Fed. R. Civ. P. 15(a)).

"A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1998). "The party opposing the

amendment has the burden to show the basis for the denial." *U.S. Bank Nat'l Assoc. v. Multi-Serv Corp.*, 2015 WL 9272846, at *2 (D. Kan. Dec. 1, 2015).

Because Defendants maintain the amendment is futile, the motion to dismiss standard is also pertinent here. In reviewing a motion to dismiss, the Court "assume[s] the truth of all well-pleaded facts in the complaint," and construes all reasonable inferences in the light most favorable to the Plaintiff. *Western Watersheds Project v. Michael*, 869 F.3d 1189, 1193 (10th Cir. 2017). A complaint must contain a "short and plain statement of the claims showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the statement of the claim under Rule 8(1)(2) must be "more than an unadorned, the defendant unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusion' or a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 577.).

Arguments that a party lacks standing are decided pursuant to Fed. R. Civ. P. (12)(b)(1). *Samaritan Ministries Int'l v. Kane*, 760 F. Supp. 3d 1267, 1274 (D.N.M. Dec. 20, 2024) ("Because standing is jurisdictional, a motion to dismiss for lack of standing is properly asserted under Federal Rule of Civil Procedure 12(b)(1)."). Motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter is based." *Ruiz v. McDonnell*, 299

F.3d 1173, 1180 (10th Cir. 2002). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. . . . When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 426, 437 (2001).

*Fraud Claims: Counts 14, 15 & 16.*

Plaintiffs seek to amend their complaint to add three claims arising out of fraud: constructive fraud (Count 14), negligent misrepresentation (Count 15), and intentional misrepresentation/actual fraud (Count 16). Docket No. 84-1. Purple Wave argues Plaintiffs lack standing to pursue these claims. The undersigned Magistrate Judge agrees.

"The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *The Wilderness Soc'y v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Elk Grove Unified Sch. Dist.v. Newdow*, 542 U.S. 1, 11 (2004)). Purple Wave challenges both Article III standing and prudential standing.[1]

[1] AFI does not explicitly challenge Plaintiffs' standing to bring the fraud-based claims. Instead, AFI argues Plaintiffs are "strangers to the contract for sale" of the International. Docket No. 4. Nonetheless, this argument is tangential to the doctrines of standing and Fed. R. Civ. P. 17's "real party in interest" requirement, and the Court has authority to consider standing *sua sponte*. *See Bishop v. Oklahoma*, 333 Fed. Appx 361, 364 (10th Cir. 2009) (noting courts have the authority to address Article III standing *sua sponte*); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1162 (10th Cir. 2013) (J. Bacharach, concurring) (noting courts have discretion to address prudential standing despite it being subject to waiver.).

Article III of the United States Constitution restricts federal courts to the adjudication of "Cases" and "Controversies." U.S. Const. art III, § 2, cl. 1. Article III standing is conferred on a plaintiff where three elements are present: (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the complained-of conduct; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"Prudential standing is not jurisdictional in the same sense as Article III standing[,]" *Finstuen v. Crutcher*, 496 F.3d 1139, 1147 (10th Cir. 2007), but rather it is "a judicially-created set of principles that, like constitutional standing, places limits on the class of persons who may invoke the court's decisional and remedial powers." *Bd. of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (internal quotation marks omitted). Traditionally, there are three prudential-standing requirements: (i) "a plaintiff must assert his own rights, rather than those belonging to third parties"; (ii) "the plaintiff's claim must not be a generalized grievance shared in substantially equal measure by all or a large class of citizens"; and (iii) "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit."[2] *Id.*

---

[2] In *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014) clarified that the "generalized grievances" and "zone of interests" prongs are not properly classified as prudential standing. 572 U.S.  1386-87. At issue here is whether Plaintiffs are seeking to bring claims more appropriately belonging to a third party, *i.e.*, Aquino. This issue "continue[s] to be

"Under the prudential standing doctrine, a party may not 'rest its claims' on the rights of third parties where it cannot 'assert a valid right to relief of its own.'" *Hill v. Warsewa*, 947 F.3d 1305, 1309-10 (10th Cir. 2020) (citing *Wilderness Soc'y*, 632 F.3d at 1170). Despite the general rule, under the doctrine of third-party standing a plaintiff is permitted to assert the rights of another where they can make two showings. "First, the plaintiff must be able to show that 'the party asserting the right has a 'close' relationship with the person who possesses the right.' . . . And second, the plaintiff must be able to show that 'there is a hinderance' to the possessor's ability to protect his own interests." *Parker Livestock, LLC v. Okla. City Nat'l Stock Yards Co.*, 2013 WL 12303733, at * 1 (W.D. Okla. Sept. 4, 2013) (citing *Aid for Women v. Foulston*, 441 F.3d 1101, 1111 (10th Cir. 2006)). "Fed R. Civ. P. 17(a)(1), which provides that '[a]n action must be prosecuted in the name of the real party in interest,' essentially codifies this portion of the prudential standing doctrine." *Brumfiel v. U.S. Bank*, 618 Fed. Appx 993, 936 (10th Cir. 2015) (alterations in original) (quoting *RMA Ventures Cal. V. SunAmerica Life Ins. Co.*, 576 (F.3d 1070, 1073 (10th Cir. 2009)).[3]

---

analyzed under the framework of prudential standing." *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020).

[3] Despite indicating Rule 17 "codifies" the concept of prudential standing, the Tenth Circuit has noted "'[t]he concept of a real party in interest should not be confused with the concept of standing. The standing question arises in the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional principle. . . . ' 'Real party in interest' is very different from standing.'" *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1156 n. 7 (10th Cir. 1985) (quoting C. Wright, The Law of Federal Courts, 425-53 n.2 (4th ed. 1983)); *FDIC v. Bachman*, 894 F.2d 1233 (10th Cir. 1990) ("The law of standing is almost exclusively concerned with such public law questions as determinations of constitutionality and review of administrative or other governmental action. The term 'standing,' however, is used loosely in many contexts to denote the party with a right to bring a particular cause of action. This practice leads to much confusion when it is necessary to distinguish between 'standing' in its most

The undersigned Magistrate Judge begins by assuming Plaintiffs have Article III standing and assessing whether Plaintiffs are the "real party in interest" and have prudential standing to bring their claims. *Tenet v. Doe*, 544 U.S. 1, 6 n. 4 (2005) ("The prudential standing doctrine[] represents the sort of 'threshold question' we have recognized may be resolved before addressing jurisdiction.") (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."). In a diversity action, the question of whether a party is the real party in interest is to be governed by the substantive law of the relevant state. *Hoeppner Constr. Co. v. U.S. for the Use of Magnum*, 287 F.2d 108, 111 (10th Cir. 1960). AFI maintains Louisiana law governs the claims Plaintiffs seek to add in their Amended Complaint, whereas Plaintiffs maintain Oklahoma law is the correct choice of law. Regardless of which state's law applies, Plaintiffs are not the real party in interest for the fraud claims they seek to add. *See Okla. Quarter Horse Racing Ass'n v. Remington Park, Inc.*, 1999 OK CIV APP 75, 987 P.2d 1216 (1999) (concluding Quarter Horse Racing

---

technical sense and the concept of real party in interest under Fed. R. Civ. P. 17(a))." Because the case at bar does not address constitutionality or the review of administrative/governmental action, it appears to the undersigned Magistrate Judge that the concept of the "real party in in interest" is the appropriate concept here. But, because the two concepts are heavily intertwined and other courts have nonetheless applied the concept of prudential standing to issues that do not concern public law and/or agency/governmental action, the undersigned Magistrate Judge addresses both in tandem. *See OptumRx PBM of Ill., Inc. v. Nat'l Benefit Builders, Inc.*, 2025 WL 2636574, at * 8 (D. Colo. Sept. 12, 2025) (finding prudential standing, rather than Article III standing, to be the "appropriate framework" because "the dispute [was] whether Plaintiff . . . is the appropriate entity to bring this action [for RICO and tort claims], and not whether there has been a harm to be remedied" and not discussing Fed. R. Civ. P. 17(a) separate from prudential standing); *Dollar Rent A Car, Inc. v. Westover Car Rental, LLC*, 2018 WL 3420814, at *5 (N.D. Okla. July 13, 2018) (finding, due to an assignment, the defendant was "not the real party in interest when it filed [its claim] and therefore lacks prudential standing.").

Association was not the real party in interest and did not have standing to pursue the fraud-based claims because "[t]he party bringing the action must be able to show he was damaged as a result of the alleged fraudulent acts."); *see generally QuarterNorth Energy, LLC v. Crescent Midstream, LLC*, 2022 WL 4465512, at *3 (E.D. La. Sept 26, 2022) ("to determine the real party in interest in this action it is necessary to determine which party holds the substantive right sought to be enforced under Louisiana law.") Moreover, Oklahoma law and Louisiana law are similar in that, for a plaintiff to establish a cause of action for fraud and/or constructive fraud, they must show they, not someone else, relied on the misrepresentation. *See Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1259 (W.D. Okla. Mar. 20, 2012) (Under Oklahoma law, "to be actionable . . . constructive fraud like actual fraud 'require[s] detrimental reliance by the . . . complaining [parties]." (alterations in original) (quoting *Howell v. Texaco, Inc.*, 112 P.3d 1154, 1161 (Okla. 2004); *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem.*, 2026 WL 183770, at *28 (La. Ct. App. 4th Jan. 23, 2026) ("[A] party asserting fraud is required to allege that it was unaware that the opposing party's representation was false, and that the misrepresentation caused it to act differently than it would have had it known the truth. . . . Moreover, the justifiable reliance element is a distinct one from the 'resulting damages' requirement. . . . As a commentator observes, it is not enough that the defendant make a material, factual misrepresentation that causes injury to the plaintiff. The injury *must* come about by virtue of the *plaintiff* justifiably relying on the apparent truth of the misrepresentation.") (emphasis added) (internal quotations, alterations, and citations omitted); *Smolensky v. McDaniel*, 144 F. Supp. 2d 611, 621 (E.D. La. May 16, 2001)

("Reliance is an essential element of a negligent misrepresentation claim. Under Louisiana law, a plaintiff must prove '(1) a legal duty on the part of the defendant to supply correct information to the **plaintiff**, (2) a breach of that duty, and (3) damages to the plaintiff *as a result of justifiable reliance* on the misrepresentation.'') (bold added) (italics in original); *Cope v. Citimortgage, Inc.*, 2010 WL 4976868, at * 3 (W.D. La. Dec. 1, 2010) ("There is no legally cognizable cause of action for constructive fraud under Louisiana law.").

Here, the proposed amended complaint, Docket No. 84-1, seeks to add claims for constructive fraud (Count 14), negligent misrepresentation[4] (Count 15), and intentional misrepresentation/actual fraud (Count 16), asserting that AFI and Purple Wave deceived Aquino through advertisements containing misleading photographs/videos and failed to disclose to Aquino the removal of safety equipment. Docket No. 84-1 at pp. 4-5, 11-12, ¶¶ 19-28 & 63-78). These allegations do not allege that Plaintiffs Butler, Carter, and Durossette were, themselves, misled or defrauded but, rather, assert Aquino was defrauded. Accordingly, as Purple Wave notes in its motion to dismiss, the only party with any standing to sue under any of these claims is Aquino, as he was the purchaser of the truck and the subject of any alleged fraud. Docket No. 91, at p. 3.

In response to the assertion that Aquino is the only party with standing to sue for the fraud-based claims, Plaintiffs assert that the Court, in dismissing Purple Wave's indemnity claim against Aquino, recognized that Plaintiffs are suing Purple Wave directly,

[4] Under Oklahoma law a claim for negligent misrepresentation is indistinguishable from a claim for constructive fraud, as they require the same elements. *See Mercer v. State Farm Fire and Casualty Ins.*, 2025 WL 2924512, at *3 (E.D. Okla. Oct. 15, 2025).

not based on vicarious liability through Aquino. Docket No. 94, at p. 3 (citing Docket No. 85). However, in rejecting Purple Wave's indemnity claim, the Court reviewed the initial complaint, which does not assert any fraud-based claims. *See* Docket No. 85, at p. 10 (citing Docket No. 201, at pp. 11-23). The proposed amended complaint does not assert any allegations indicating that Plaintiffs were the victim of fraud or misrepresentations perpetuated by Purple Wave and/or AFI, and it does not allege any facts to show that Plaintiffs have a close relationship with Mr. Aquino such that they may have third-party standing. *See* Docket No. 84-1. Indeed, despite relying on materials outside of the proposed amended complaint, Plaintiffs' responses to Purple Wave's and AFI's Motions to Dismiss fail to identify any fraud or misrepresentations that were made by AFI or Purple Wave to *Plaintiffs*. As such, Plaintiffs are asserting the legal rights and interests of Third-Party Defendant, Aquino, and not their own legal rights or interests. Plaintiffs, thus, are not the real party in interest and lack prudential standing to bring their claims of constructive fraud (Count 14), negligent misrepresentation (Count 15), and intentional misrepresentation/actual fraud (Count 16) against Defendants AFI and Purple Wave.

Rule 17(a)(3) provides that:

> [t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). "However, Rule 17(a)(3) does not apply universally, but rather only 'to cases in which substitution of the real party in interest is necessary to avoid injustice.'" *Wilson v. Tucker*, 2011 WL 43089, at *3 (N.D. Okla. Jan 5, 2011) (quoting 6A

Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1555 (3d ed. 1998). Here, Third-Party Defendant Aquino is a party to this action and has been for over a year. To the extent Mr. Aquino wished to pursue claims of fraud against AFI and Purple Wave, he has had a full opportunity to assert such claims. As such, no injustice will occur here. *See Id.* ("Here, both plaintiff and the trustee received service of Arvest's objection on standing grounds in the bankruptcy adversary proceeding. . . . Neither plaintiff not trustee has made any effort to substitute the trustee as the real party in interest. Moreover, there is an adversary proceeding pending in the Bankruptcy Court. Although both parties are currently seeking to dismiss that proceeding, its ongoing nature provides plaintiff, the trustee, and plaintiff's creditors a full opportunity to proceed on his claims to the extent warranted."). As such, the undersigned Magistrate Judge recommends that Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 84] be denied as to Plaintiffs' claims for constructive fraud (Count 14), negligent misrepresentation (Count 15), and intentional misrepresentation/actual fraud (Count 16) as amendment would be futile. *See Okla. Quarter Horse Racing Ass'n*, 1999 OK CIV APP 75, 987 P.2d 1216 (1999).

*Violations of the OCPA and ODTPA: Counts 17 & 18.*

The undersigned Magistrate Judge also finds Plaintiffs should be denied leave to amend their complaint to add claims for violations OCPA (Count 17) and the ODTPA (Count 18). As to Plaintiffs' ODTPA claim, Plaintiffs have withdrawn their request to add this claim. Docket No. 93, at p. 7. Accordingly, the undersigned Magistrate Judge recommends that Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 84] be denied as to Plaintiffs' Oklahoma Deceptive Trade Practices Act Claim (Count 18).

Regarding Plaintiffs' claim under the OCPA, AFI argues that Plaintiffs were "strangers to the sale of the truck," identified no misrepresentation by AFI on which they—not Aquino—relied, and Louisiana law applies such that Plaintiffs cannot maintain claims under the OCPA. Docket No. 90, at p. 6. Likewise, Purple Wave asserts Plaintiffs lack standing and that claims under the OCPA require the alleged false marketing be made to the subject of a consumer transaction. Docket No. 91, at pp. 2-3. In response to AFI's arguments, Plaintiffs assert Defendants' deceptive marketing reached a nationwide audience and inserted a "lethal hazard directly into the Oklahoma stream of commerce." Docket No. 93. In response to Purple Wave, Plaintiff maintains that they have gathered, through discovery, evidence of Defendants' wrongful conduct, and reiterate that they are not seeking to pursue claims in Aquino's name.

Assuming Oklahoma law is applicable to the case at bar such that Plaintiffs may maintain a cause of action under the OCPA, Plaintiffs proposed amended complaint nonetheless fails to state a claim upon which relief may be granted.

> [T]he four elements of a consumer's private action under the OCPA are: (1) that the defendant engaged in an unlawful practice as defined in [Okla. Stat. tit. 15, § 753]; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, *as a consumer*, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.

*Patterson v. Beall*, 2000 OK 92, ¶ 30,19 P.3d 839, 846 (2000) (emphasis added). "Furthermore, the remedy portions of the Act addresses, in part, 'customers.' 'The commission of any act or practice declared to be a violation of the Consumer Protection A[c]t shall render the violator liable to the aggrieved consumer for payment of actual

damages sustained by the *customer* . . .'" *Melvin v. Nationwide Debt Recovery, Inc.*, 2000 WL 33950122, at *3 (W.D. Okla. Aug. 24, 2000) (emphasis in original) (quoting Okla. Stat. tit. 15, § 761.1(A)). The proposed amended complaint fails to allege facts indicating Plaintiffs, who did not purchase the International, constitute an aggrieved consumer/customer under the OCPA and, in their briefing, Plaintiffs fail to plausibly explain to the Court how they, by virtue of being involved in a motor vehicle accident, may maintain a cause of action under the OCPA without being consumer. Other courts have found relationships less tenuous than the one here insufficient to state a claim under the OCPA as a consumer.[5] *CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257, 1262 (N.D. Okla. June 23, 2011) (granting motion for summary judgment as to plaintiffs' claim for violation of the OCPA as "a person must have *consumed* a commodity or service in order to be an 'aggrieved consumer' with a private right of action. The fact that EMS's predecessor-in-interest was once a distributor involved in the 'business oriented' purpose of selling and distributing Citadel's composite wrap products does not make Citadel an 'aggrieved consumer' entitled to pursued damages under the OCPA."); *Melvin,* 2000 WL 33950122, at *3 (finding plaintiffs could not maintain an OCPA action against debt

[5] The term "consumer" is not defined in the OCPA. Relying on Webster's Third New International Dictionary and Black's Law Dictionary, *CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257 (N.D. Okla. June 23, 2011) analyzes the ordinary definitions of the words consumer and customer. The *CTI* court explains "consumer" means '[o]ne that consumes' . . . and '[a] person who buys goods or services for personal, family, or household use, with no intention of resale.'" 798 F. Supp. 2d at 1263 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 490 & BLACK'S LAW DICTIONARY at 358 (9th ed.). "Similarly, 'customer' means 'one that purchases some commodity or service.'" *Id.* (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 559). Based on the facts as alleged in the proposed amended complaint, Plaintiffs do not meet these definitions with respect to the International.

collectors seeking to collect on a "consumer debt" reasoning a deceptive trade practice "must occur in relation to a consumer transaction" and "[a]lthough plaintiffs did at some point purchase goods or services with their Visa card, resulting in the debt Defendant was attempting to collect, Defendant did not advertise, offer to sell or purchase, or distribute services or property of any kind *to Plaintiffs*.") (emphasis added). Therefore, any amendment to bring a claim under the OCPA is futile because Aquino was the purchaser/consumer of the International and, thus, Plaintiffs' claim under the OCPA would be subject to dismissal for lack of standing and/or failure to state a claim. As such, the undersigned Magistrate Judge recommends Plaintiffs be denied leave to amend to add a claim for violations of the Oklahoma Consumer Protection Act (Count 17) as any such amendment would be futile.

*Joint Venture Liability.*

Finally, Plaintiffs seek to add a claim for joint-venture liability against both AFI and Purple Wave. In this regard, the proposed first amended complaint alleges:

> During the inventory and listing process, Purple Wave and [AFI] acted as joint venturers. Purple Wave sent representatives to [AFI's] yard, where Purple Wave and [AFI] then conspired to jumpstart the dead battery specifically to stage and film a deceptive video of the inoperable Product for the buying public. The sole purpose of the staged auction listing was to increase profits for both Purple Wave and [AFI]."

Docket No. 84-1, at p. 4, ¶ 19. Ultimately, Plaintiffs allege Purple Wave and AFI "acted as joint venturers in a profit-driven scheme to market, misrepresent, and sell the subject Product." Docket No. 84-1 at p. 10, ¶ 60.

AFI does not challenge Plaintiffs' joint venture claim directly but generally asserts that Plaintiffs' proposed amendments are conclusory and do not provide sufficient specificity to demonstrate a right to relief. Docket No. 90, at p. 2. Conversely, Purple Wave asserts granting Plaintiffs' leave to amend to add this theory of liability is futile because "Plaintiffs cannot prove" AFI and Purple Wave had a joint interest in property or had an express/implied agreement to share profits/losses, as required for an Oklahoma joint venture. Docket No. 91. Although, "[a] court may properly deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment[,]" *Bauchman*, 132 F.3d 542 at 562, the undersigned Magistrate Judge is not inclined to convert Plaintiffs' motion for leave to amend into a motion for summary judgment at this juncture, rather, the undersigned Magistrate Judge assesses whether Plaintiffs' proposed amended complaint alleges sufficient facts to survive a motion to dismiss, not a motion for summary judgment.

Assuming, as Plaintiffs assert, that Oklahoma law[6] governs whether Defendants formed a joint venture, Plaintiffs must show three elements to establish the existence of a joint venture: "1) [a] joint interest in property (the contributions need not be equal or of the

---

[1] Federal courts sitting in diversity apply the substantive law of the forum state, including the forum state's choice and conflicts of law rules. "Oklahoma Courts assume that Oklahoma law governs, unless a party asserting that a different law applies carries its 'burden of identifying and invoking' another state's law. Said party must plead and prove that an actual conflict between the bodies of law exists." *Cartessa Aesthetics, LLC v. Lorents*, 2024 WL 5047472, at *3 (W.D. Okla. Dec. 9, 2024) (citing *Lewis v. Sac & Fox Tribe of Okla. Hous. Auth.*, 896 P.2d 503, 513 (Okla. 1994)). Here, neither Defendant maintains a conflict exists between Oklahoma and Louisiana law as it pertains to joint venture liability. As such, the undersigned Magistrate Judge applies Oklahoma law.

same character), 2) [a]n express or implied agreement to share profits and losses of venture, [and] 3) [a]ction or conduct showing cooperation in the venture." *Le v. Total Quality Logistics, LLC*, 2018 OK CIV APP 71, ¶ 42, 431 P.3d 366, 378 (2018). "The profit accruing, however, must be *joint and not several*, otherwise every person, firm or individual who performed work or labor in connection with a project might be termed joint adventurers, whether they had such intention or not." *Id*. at ¶ 43, 431 P.3d at 378. In other words, a joint venture is not formed just because parties come together to perform some part of a project and each party intends to make profit. Indeed, the Oklahoma Supreme Court is "reluctant to find a 'joint interest in party' whenever one party contracts for services with another." *McGee v. Alexander*, 2001 OK 78, ¶ 21, 37 P.3d 800, 806 (2001). "The absence of any one element is enough to defeat Plaintiffs' contentions of joint venture." *Id.* at ¶ 22, 37 P.3d at 806.

Plaintiffs' proposed amendment seeks to establish a joint venture between AFI and Purple precisely on the basis that (i) Purple Wave contracted with AFI to provide services, *i.e.*, auction the International, and (ii) they both would make a profit from said sale. These allegations are insufficient to establish a claim for joint liability under Oklahoma law as they fail to establish a joint interest in property and fail to sufficiently allege an agreement to share in profits *and* losses that are joint rather than several. *See McGee*, 2001 OK 78, at ¶ 21-23, 37 P.3d at 806 (granting summary judgment finding Plaintiffs' argument that the joint enterprise itself is joint interest in property unpersuasive); *Roger v. Anheuser-Busch, Inc.*, 2006 WL 687158, at *3 (W.D. Okla. Mar. 15, 2006) (granting summary judgment, finding "[t]here is no evidence that Tumbleweed and defendants agreed to share in the

profits or losses of the 2002 Calf Fry; rather, the relationship between defendants and Tumbleweed was one of supplier and purchaser. . . . Plaintiffs attempt to prove profit-sharing by arguing that 'Anheuser-Busch made an immediate financial profit in the kegs sold at the Calf Fry' and that 'the more beer consumed at the event directly equated to more money Anheuser-Busch made.' This argument, however, eviscerates the second element of the joint venture test and would open all suppliers to liability as joint-venturers. This is inconsistent with the Oklahoma Supreme court's pronouncements in *Mcgee*, 37 P.3d at 806."), *aff'd*, 491 F.3d 1165 (10th Cir. 2007); *Com. Lumber Co. v. Nelson*, 181 OK 122, 72 P.2d 829 (1937) (finding no joint venture where profit was based on "the sale of lumber and materials . . . and not any of the profits in the building venture itself."). As such, the undersigned Magistrate Judge finds amendment futile as to this claim.

Furthermore, as it pertains specifically to Plaintiffs' joint venture claim, the undersigned Magistrate Judge finds that Plaintiffs should be denied leave to amend their complaint to add this claim for undue delay. Fed. R. Civ. P. 15 (a)(2) provides that "[t]he court should freely give leave" to amend "when justice so requires[,]" and "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Both AFI and Purple Wave argue that Plaintiffs' motion for leave to amend should be denied, wholesale, for undue delay. Plaintiffs assert no undue delay exists here because only Plaintiffs have been actively advancing discovery and that the motion for leave to amend was filed prior to the deadline to amend. "Courts in the Tenth Circuit have

routinely held that there is no undue delay when a motion to amend is filed before either a deadline for amending pleadings has been set or such deadline has expired." *Stenulson v. ROI Solutions, LLC*, 2021 WL 6125838, at *4 (D. Utah Dec. 28, 2021) (collecting cases).

However, this is not a case in which the deadline to amend has never lapsed, as the deadline to amend lapsed, initially, on August 18, 2025, and remained lapsed for approximately eight months until, following an unopposed motion to extend the lapsed deadline, the Third Amended Scheduling Order set a new deadline of May 31, 2026. Docket Nos. 24, 45, 73, 77 & 80.[7] If this were the only issue, the undersigned Magistrate Judge would not find undue delay, especially in light of AFI and Purple Wave lack of objection to Plaintiffs' motion to reopen the deadline to amend. The critical issue is that the facts pertaining to Plaintiffs' joint venture claim were known to Plaintiffs at the time

[7] Following entry of the Scheduling Order, on January 15, 2026, the Parties moved to extend the deadlines set forth in the Scheduling Order [Docket No. 24]. The substance of this motion did not request an extension as to the deadlines for (i) motions for joinder of parties and/or amendment, (ii) preliminary witness lists and proposed exhibits, or (iii) Plaintiffs' expert identification and reports, all of which had lapsed. Docket No. 43, at p. 4. Indeed, as to the deadlines for joinder/amendment and exchange of preliminary witness lists/proposed exhibits, the proposed order submitted by the parties reflected that these deadlines were "completed." Docket No. 43-1. An Amended Scheduling Order was entered that same day which did not revive the deadline for motions for joinder/amendment. Docket No. 45. On April 1, 2026, the Parties submitted another joint motion to modify the scheduling order, asserting that the Amended Scheduling contained a "typographical omission regarding Plaintiffs' expert disclosure deadline," and requested "the remaining deadlines in the Scheduling Order [be extended] by at least sixty (60) days." Docket No. 71, at pp. 2-3. The proposed order submitted in connection with this motion reflected also sought new deadlines for motions for joinder/amendment and exchange of preliminary witness lists/proposed exhibits. Docket No. 71-1. Finding the motion failed to set for the excusable neglect for extending any of the expired deadlines, the Court granted the motion in part, only extending those deadlines that had not lapsed. Docket Nos. 72 & 73. On May 1, 2026, over eight months after the deadline for motions for joinder/amendment had lapsed, Plaintiffs filed an unopposed motion to extend the deadlines for joinder, amendment, and Plaintiffs' expert, which was granted. Docket No. 76.

they filed the initial petition. Indeed, based on the facts of the proposed amended complaint, Plaintiffs assert a joint venture existed between AFI and Purple Wave because "[b]oth parties shared a joint interest, an agreement to share profits, joint control, and combined their resources: Northshore provided the salvage chassis and performed the physical work of stripping it, while Purple Wave provided the auction specialists, videography, and nationwide marketing platform." Docket No. 84-1, at p. 11, ¶ 61. These facts were known to Plaintiffs at the time they initially filed this action and were included in Plaintiffs' initial petition. Docket No. 2-1, at pp. 4-6, & 20, ¶¶ 16, 18, 21, 86, 87 & 89) ("Purple Wave was and is in the business of and derives substantial revenue from owning and operating one of the nation's largest wholesale heavy equipment auction companies. . . . The Purple Wave website also specifically states that . . . a Purple Wave 'auction specialist will come to your location to thoroughly catalog and list your machine – taking quality, in depth images and video to showcase your item to our large buying community.' . . . Northshore contracted with Purple Wavee to auction and sell a 2013 International Truck[.] . . . Purple Wave . . . had a duty to auction the moving truck in a condition that was not defective and that was not unreasonably dangerous to the motoring public and vehicle occupants. . . . Purple Wave knew or should have known that Northshore had altered and modified the moving truck[.]"). Although Plaintiffs may not have known of the particulars of the relationship between AFI and the Purple Wave or the alleged fraud they perpetuated on Aquino at the time they filed this action, Plaintiffs did know AFI and Purple Wave entered into a contract to auction the International and Purple Wave took images/videos of the International in connection with the auction and knew or should of known of the safety hazard the

International posed. These are the precise facts Plaintiffs now seek to utilize to allege a claim for joint venture liability. Thus, because Plaintiffs could have pled this claim at the outset of this action, the undersigned Magistrate Judge recommends Plaintiffs be denied leave to amend their complaint to add their claim for joint venture liability. *Dickerson v. Zayo Grp., LLC*, 2021 WL 7368171, at *5 (D. Colo. Sept. 20, 2021) ("A motion for leave to amend is not *per se* permissible simply because it was filed before the deadline set forth in a scheduling order. It may still be deemed unduly delayed if the moving party fails to move as soon as practicable after learning of the necessity for amendment. . . . Here, Plaintiff . . . knew of and could have pled his individual Colorado claim in the complaint from day one. . . . Plaintiff's request, though filed before the deadline, is unduly delayed and Plaintiff's explanations for seeking leave to amend to add a class action claim for violation of the Colorado Wage Act fail to demonstrate that justice requires amendment. The request to dramatically transform this case is unfairly prejudicial to both the Court and Defendant and should be denied.").[8]

In sum, the undersigned Magistrate Judge recommends Plaintiffs' Motion for Leave to Amend Complaint should be denied as to all claims. As to Plaintiffs' claims for constructive fraud (Count 14), Negligent Misrepresentation (Count 15), Intentional Misrepresentation/Actual Fraud (Count 16), the undersigned Magistrate Judge finds

[8] To be clear, the undersigned Magistrate Judge does not find Plaintiffs unduly delayed in seeking leave to amend as it pertains to the other counts they seek to add. Indeed, it appears Plaintiffs only recently learned of much of the information pertaining to the fraud-related claims they seek to add. However, as discussed *infra*, the fraud related claims and any claim under the OCPA belong to, if anyone, third-party Defendant Aquino—not Plaintiffs.

amendment is futile because Plaintiffs are not the real-party in interest and lack prudential standing. Plaintiffs should be denied leave to amend to add a claim Violations of the OCPA (Count 17) as they lack standing to bring such a claim and, as alleged, such a claim would be subject to dismissal for failure to state claim. Plaintiffs have withdrawn their claim for Violations of the ODTPA and, as such, should be denied leave to amend as to this claim. Lastly, the undersigned Magistrate Judge finds Plaintiffs' request for leave to amend to add a claim for joint venture liability (Count 13) should be denied because of undue delay and futility.

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 84] be DENIED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

IT IS SO ORDERED this 28th day of August 2026.



**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**